STATE OF MINNESOTA

IN SUPREME COURT

A22-0829

Court of Appeals
                                                                        McKeig, J.
                                              Took no part, Procaccini, Hennesy, JJ.
Nicholas W. Sterry,

            Respondent,

vs.                                                              Filed: June 20, 2024
                                                            Office of Appellate Courts
Minnesota Department of Corrections (DOC),

            Appellant,

and

Correctional Officer Ashley Youngberg,
in her individual and official capacities,

            Defendant.

_____

Zorislav R. Leyderman, The Law Office of Zorislav R. Leyderman, Minneapolis, Minnesota, for respondent.

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Anna Veit-Carter, Assistant Attorney General, Saint Paul, Minnesota, for appellant.

Paul A. Merwin, Patricia Y. Beety, League of Minnesota Cities, Saint Paul, Minnesota, for amici curiae League of Minnesota Cities and Minnesota School Boards Association.

Bradford Colbert, Elena Basill, Certified Student Practitioner, Legal Assistance to Minnesota Prisoners Clinic at Mitchell Hamline Law School, Saint Paul, Minnesota, for amicus curiae Legal Assistance to Minnesota Prisoners Clinic at Mitchell Hamline School of Law.

Jennifer E. Olson, TSR Injury Law, Bloomington, Minnesota; and

1

Charles A. Bird, Grant M. Borgen, Matthew B. De Jong, Bird, Stevens & Borgen, P.C., Rochester, Minnesota, for amicus curiae Minnesota Association for Justice.

Katharine Hannaher, Minnesota Coalition Against Sexual Assault, Saint Paul, Minnesota, for amicus curiae Minnesota Coalition against Sexual Assault.

_____

## S Y L L A B U S

1.     For a state employer to be held vicariously liable for an employee's intentional tort under the Minnesota State Tort Claims Act, Minnesota Statutes section 3.736 (2022), the tort must: (1) be related to the duties of the employee; and (2) occur within work-related limits of time and place—consistent with the common law standard under which the employer, if a private person, would be vicariously liability.

2.     The district court erred when dismissing a complaint against the Minnesota Department of Corrections for failure to state a claim upon which relief can be granted because the facts alleged in the complaint—including a state employee's perpetration of a sexual assault and sexual harassment—could allow a jury to find that the state employee was acting within the scope of office or employment under circumstances where the Department would be liable under the common law for vicarious liability.

Affirmed.

## O P I N I O N

MCKEIG, Justice.

This appeal requires us to interpret the Minnesota State Tort Claims Act (the Act), part of which allows for a state employer to be held vicariously liable for the tortious acts or omissions of an employee if those acts or omissions occur while the employee is acting

2

within the scope of office or employment under circumstances where a private employer would be vicariously liable. Minn. Stat. § 3.736, subd. 1 (2022). Respondent Nicholas Sterry brought an action against appellant Minnesota Department of Corrections (the Department) for claims of battery, intentional and negligent infliction of emotional distress, and negligence for an alleged sexual assault and sexual harassment by one of its correctional officers. The district court dismissed Sterry's claims for failure to state a claim upon which relief can be granted, concluding that the state employer was immune from the suit under the Act because the correctional officer was not acting within the scope of her employment when the alleged assault occurred. The court of appeals reversed, finding the Act consistent with common law principles of vicarious liability applicable to private employers, and therefore, that Sterry's complaint alleged sufficient facts to survive the motion to dismiss. Because a state employer's exposure to vicarious liability is consistent with that of a private employer under the common law, and because Sterry alleged sufficient facts to survive the Department's motion to dismiss, we affirm.

**FACTS**

Because we are reviewing a dismissal for failure to state a claim, we must accept the allegations in Sterry's complaint as true. *See Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). The following facts have been taken directly from the complaint.

In early 2018, Sterry was incarcerated at the Moose Lake Correctional Facility and worked in the prison kitchen. Officer Ashley Youngberg was employed by the prison as a correctional officer during that period, and she was known to sexually harass and intimidate the inmates on a regular basis. The Department—the state government agency that

3

operates the Moose Lake facility—was aware of Youngberg's history of harassment, but there is no record of discipline prior to the incidents that form the basis of Sterry's claims. From February through May of 2018, on a near-daily basis, Youngberg would engage in conduct or make comments which included directing sexually suggestive faces and poses toward Sterry, telling Sterry that it would be fun for him to be with her, and making comments such as "[y]ou're cute," "[y]ou're sexy," and "I bet you look good."

This behavior culminated in an incident that occurred in late April 2018. Youngberg was supervising Sterry in the prison kitchen when she ordered him into a supply room to conduct inventory. While Sterry conducted the inventory, Youngberg reached inside his pants and fondled his penis without consent. Sterry was unsure if he was being sexually assaulted or being subjected to an authorized search, but he ultimately stepped away and informed Youngberg that he was not interested in sexual contact with her. At that point, Youngberg told Sterry that if he told anyone else about the encounter, she would claim that he sexually assaulted her—which would subject him to administrative and criminal discipline. This was the only sexual contact, though Youngberg's other conduct and comments continued until May 2018.

In March 2021, Sterry filed a civil action against the Department for battery, intentional and negligent infliction of emotional distress, and negligence and negligence per se, under a theory of vicarious liability.[1] The district court dismissed the vicarious

---

[1] The action also contained defendants not relevant to the issue before us. The State of Minnesota and the Commissioner of the Department of Corrections were initially included as parties but were dismissed as improper defendants by the district court.

liability claims against the Department, finding that the State was immune from liability under the Act.

Sterry appealed the dismissal of the vicarious liability tort claims against the Department. The court of appeals reversed, finding that Sterry's complaint alleged sufficient facts that could allow a factfinder to determine that Youngberg had been acting within the scope of employment, which would allow the Department to be held liable under the Act. *Sterry v. Minn. Dep't of Corr.*, 986 N.W.2d 715, 723–25 (Minn. App. 2023). In so holding, the court of appeals concluded that a state employer's liability for the intentional torts of its employees was consistent with that of a private employer's liability under the common law. *Id.* at 723. We granted the Department's petition for review.

## ANALYSIS

This case presents two questions. First, under what circumstances would a state employer face vicarious liability for an intentional tort under the Minnesota State Tort Claims Act?[2] Second, did Sterry allege facts sufficient to survive a motion to dismiss,

---

Youngberg was also included in the action, though there is no indication that she was ever served with a copy of the summons and complaint. Sterry voluntarily dismissed Youngberg as a party.

Also not relevant to our analysis are additional claims including civil rights violations, public services discrimination, and negligent retention and supervision. The civil rights and public services discrimination claims were dismissed by the district court— a decision which was not appealed—and in a separate filing, the negligent retention and supervision claims were dismissed by stipulation of the parties.

[2] Note that the Minnesota State Tort Claims Act, referred in this opinion as "the Act," is specific to Minnesota Statutes section 3.736 (2022). It does not include Minnesota Statutes section 3.732 (2022), which is also analyzed here.

showing that the Department may be held vicariously liable for Youngberg's alleged sexual assault and harassment? We address these questions in turn.

I.

The State of Minnesota had historically been immune from tort liability under the doctrine of sovereign immunity until we abolished the common law doctrine in 1975. *See Nieting v. Blondell*, 235 N.W.2d 597, 601 (Minn. 1975). In *Nieting* we recognized that "[i]f the state is properly to serve the public interest, it must strive, through its laws, to . . . [provide people] with adequate remedies for injuries wrongfully inflicted upon them." *Id.* at 603. Speaking directly to the Legislature, we prospectively abolished the tort immunity of the State of Minnesota for cases "arising on or after August 1, 1976, subject to any appropriate action taken by the legislature." *Id.* The Legislature responded by passing the Act—which was passed and took effect on the date of this court's deadline—and clarified the circumstances under which the State may be held vicariously liable. Act of Apr. 20, 1976, ch. 331, § 33, 1976 Minn. Laws 1282, 1293-97 (codified at Minn. Stat. § 3.736 (1976)). The State may now be held vicariously liable for certain acts or omissions of its employees under the Act, which reads, in relevant part:

> The state will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of an employee of the state while acting within the scope of office or employment . . . under circumstances where the state, if a private person, would be liable to the claimant, whether arising out of a governmental or proprietary function.

Minn. Stat. § 3.736, subd. 1 (2022).

To determine the circumstances under which a state employer faces vicarious liability for an intentional tort under the Act, we must first analyze the statutory definition

6

of "scope of office or employment," and then the circumstances where a private employer would be vicariously liable.[3] This is a question of statutory interpretation which we review de novo. *State v. Velisek*, 986 N.W.2d 696, 699 (Minn. 2023).

A.

Sterry claims, albeit implicitly, that Youngberg was acting within the scope of her office or employment when she allegedly sexually assaulted him, which, among other factors discussed below, is a necessary precondition to subjecting the Department to liability under the Act. What falls within the "scope of office or employment" is explicitly defined in a separate statutory section within the same subchapter:

> "Scope of office or employment" means that the employee was acting on behalf of the state in the performance of duties or tasks lawfully assigned.

Minn. Stat. § 3.732, subd. 1(3) (2022).[4] "Scope of office or employment" is therefore statutorily defined as consisting of two constituent parts: 1) "acting on behalf of the state;" and 2) "in the performance of duties or tasks lawfully assigned by competent authority." *Id.*

Turning to the first part, to act "on behalf of" something means to act "as the agent or representative of" that person or entity. Bryan Garner, *A Dictionary of Modern*

---

[3]     The Municipal Tort Claims Act gives municipal employers immunity from liability "if the same claim would be excluded under section 3.736, if brought against the state." Minn. Stat. § 466.03, subd. 15 (2022). Thus, this interpretation of the Act has implications beyond the application here to state employers.

[4]     Minnesota Statutes section 3.732, subd. 1, is explicit that the meaning of "the terms defined in this section"—which includes the definition of "[s]cope of office or employment"—applies to the use of those terms "in this section *and section 3.736.*" (Emphasis added.)

7

*American Usage* 78 (1998); *see also The American Heritage Dictionary of the English Language* 167 (3d ed. 1992) (defining "on behalf of" as "[a]s the agent of"). Neither Sterry nor the Department dispute that this is the plain meaning of "on behalf of."

With respect to the second part—"the performance of duties or tasks lawfully assigned by competent authority," Minn. Stat. § 3.732, subd. 1(3)—the Department claims this phrase means that the tortious act or omission giving rise to liability must have been lawfully assigned by competent authority. This, however, is contrary to the plain language and ignores the rules of grammar. The language modified by "lawfully assigned by competent authority" is clearly the preceding phrase "the performance of duties or tasks"— not the tortious act or omission described in section 3.736, subdivision 1, of the Act itself as suggested by the Department. Such a transposition would wrongly impute the requirement of lawful assignment not to the employee's duties or tasks, but to the injury-causing act or omission found in a different statute altogether. Instead, the phrase "performance of duties or tasks lawfully assigned by competent authority" unambiguously describes an employee doing their job as assigned by their supervisors, with the caveat that the tasks assigned to the employee must be lawful.

With this analysis, we do not redefine the phrase "scope of office or employment" as defined by the Legislature in section 3.732, but rather state what that definition means. Accordingly, the "scope of office or employment," as defined by the Legislature, means that a state employee was working as an agent or representative of the state and performing duties or tasks assigned to them lawfully by their supervisor.

B.

With that interpretation in mind, we must now examine the relationship between the scope of office or employment and an employee's tortious act or omission as described in section 3.736, subdivision 1, which again, states in relevant part:

> The state will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of an employee of the state while acting within the scope of office or employment . . . under circumstances where the state, if a private person, would be liable to the claimant, whether arising out of a governmental or proprietary function.

When scrutinizing the language in the Act that exposes a state employer to vicarious liability, our goal is to "effectuate the intent of the Legislature." *State v. Powers*, 962 N.W.2d 853, 858 (Minn. 2021) (citing Minn. Stat. § 645.16 (2020)). We analyze whether language is subject to more than one reasonable interpretation. *See State v. Abdus-Salam*, 1 N.W.3d 871, 876–77 (Minn. 2024). If we find no ambiguity, we need not look to the canons of construction, instead interpreting the statute according to its plain language. *See Velisek*, 986 N.W.2d at 700–01.

The Department claims that because Youngberg's sexual contact with Sterry was criminal,[5] she could not have been "acting on behalf of the state in the performance of duties or tasks lawfully assigned." Minn. Stat. § 3.732, subd. 1(3). Under the Department's interpretation, if an employee commits an intentional tort, that employee could not, by

---

[5] At the time of the alleged assault, Youngberg's sexual contact with Sterry would have been fourth-degree criminal sexual conduct under Minn. Stat. § 609.345, subd. 1(m) (2020) ("A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the fourth degree if . . . the actor is an employee . . . of a . . . correctional system . . . and the complainant is a resident of a facility or under supervision of the correctional system. Consent by the complainant is not a defense.").

definition, be operating within the scope of their office or employment. This, however, is contrary to the common law for vicarious liability. The common law doctrine of vicarious liability as interpreted in Minnesota states that "an employer may be held liable *for even the intentional misconduct* of its employees when (1) the source of the attack is related to the duties of the employee, and (2) the assault occurs within work-related limits of time and place." *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999) (quoting *Lange v. Nat'l Biscuit Co.*, 211 N.W.2d 783, 786 (Minn. 1973)) (internal quotation marks omitted) (emphasis added). Under this common law standard, the court has held that fact issues can exist under which a sexual assault by an employee could be found to be related to the duties of the employee's employment and to have occurred within work-related limits of time and place. *See id.* at 910–13.

Thus, the primary dispute between the parties is whether the standards for state employer vicarious liability under section 3.736, subdivision 1, are to be interpreted consistent with those of the common law for private employers. Interpreting the State's liability under section 3.736, subdivision 1 to be consistent with common law principles of vicarious liability for private employers initially appears reasonable because an intentional tort committed "while acting within the scope of office or employment"—i.e., while an employee is "acting on behalf of the state in the performance of duties or task lawfully assigned," Minn. Stat. § 3.732, subd. 1(3)—is functionally consistent with an intentional tort "related to the duties of the employee . . . occur[ring] within work related limits of time and place," *Fahrendorff*, 597 N.W.2d at 910.

10

The Department, however, contends that by defining "scope of office or employment," the Legislature expressly rejected the common law standard of vicarious liability. We disagree. The Department bases this claim on our statement in *State v. Schmid*, 859 N.W.2d 816, 820 (Minn. 2015), where we stated that "[w]e do not turn to the common law definition of a word if the statute provides its own definition." But that statement does *not* stand for the proposition that, if the Legislature has provided a definition, the phrase *cannot* be consistent with the common law. After all, we have also stated that "[w]e presume that statutes are consistent with the common law, and we do not presume that the legislature intended to abrogate or modify a rule of the common law on the subject any further than that which is expressly declared or clearly indicated." *Jepsen ex rel. Dean v. Cnty. of Pope*, 966 N.W.2d 472, 484 (Minn. 2021) (quoting *Getz v. Peace*, 934 N.W.2d 347, 354 (Minn. 2019)) (internal quotation marks omitted). There is plainly no express declaration or clear indication in the statutory definition of "scope of office or employment" to suggest that the Legislature intended to abrogate the common law as to vicarious liability over private employers.

Rather, the Act makes clear that vicarious liability for the State is to be consistent with common law principles for vicarious liability over private employers. The Act is explicit in creating liability for state employers "under circumstances where the state, *if a private person*, would be liable to the claimant." Minn. Stat. § 3.736, subd. 1 (emphasis added). Sterry argues that the inclusion of the "private person" language shows that the Legislature intended the Act to be read as consistent with the common law, and we agree. If a state employer is to be treated the same as a private person—a class that would include

11

a private employer—then doing so requires treating the state employer consistent with the common law of vicarious liability as it applies to private employers.

The Department's argument that if an employee commits an intentional tort, that employee could not, by definition, be operating within the scope of their office or employment also ignores the plain language of section 3.736, subdivision 1. We often look to dictionary definitions when determining the plain meaning of undefined words in the context of a statute. *Anoka Cnty. v. L. Enf't Lab. Servs., Inc.*, 3 N.W.3d 586, 594 (Minn. 2024). The Act assigns liability to the state employer if the employee commits an injury-causing act or omission, "*while* acting within the scope of office or employment." Minn. Stat. § 3.736, subd. 1 (emphasis added). The italicized word "while" is defined as "during the time that." *Merriam Webster's Collegiate Dictionary* 1342 (10th ed. 2001). Thus, the limitation under the Act is on whether the employee's tortious act or omission occurs *during the time that* the employee was acting within the scope of office or employment. It does not categorically preclude an intentional tort from being committed while an employee acts "within the scope of office or employment," as the Department maintains.

The Department's other arguments that the State cannot be held vicariously liable for an employee's intentional torts likewise fall short. The Department claims that language found in the indemnification provision in the Act supports its position. The indemnification provision states, in relevant part:

> The state shall defend, save harmless, and indemnify any employee of the state . . . in connection with any tort . . . arising out of an alleged act or omission . . . if the employee was acting within the scope of employment. . . . *This subdivision does not apply in case of malfeasance in office or willful or wanton actions or neglect of duty.*

12

Minn. Stat. § 3.736, subd. 9 (2022) (emphasis added). The Department claims that by not requiring a state employer to defend or indemnify an employee for the listed behaviors of "malfeasance . . . willful or wanton actions or neglect of duty," a requirement to pay for that same employee's intentional torts would be "nonsensical." But these two provisions are not at odds with one another and serve distinct purposes. The Legislature, as shown here, may choose to provide compensation for potential plaintiffs for the misconduct of a state employee, but at the same time *not* require the state employer to reimburse that employee for any liability the employee incurs due to their intentional misconduct.

In fact, the language of the indemnification provision suggests precisely the opposite of what the Department claims because, under the canon against surplusage, we avoid statutory interpretations that make words or phrases superfluous, void, or insignificant. *State v. Allison*, 999 N.W.2d 835, 839 (Minn. 2024). If malfeasance, willful or wanton actions, or neglect of duty are enough to per se place an employee outside the scope of office or employment, listing those behaviors would have been completely unnecessary because the indemnification provision *only* applies to employees acting within the scope or office of their employment. The inclusion of the listed behaviors shows that under the Act, a state employee may act within the scope of office or employment while at the same time exhibiting malfeasance, willful or wanton actions, or neglect of duty.

More generally, and contrary to what the Department claims, the Act contains no language that precludes state employer liability for an intentional tort, and we decline to read that into the statute. If the Legislature had intended to prohibit state employer vicarious liability for the intentional torts of its employees, it would be reasonable to expect

13

it would have done so in the language of the statute.[6] *See Buzzell v. Walz*, 974 N.W.2d 256, 264 (Minn. 2022) (rejecting an interpretation of a statute by reasoning that, had the Legislature intended such an interpretation, "one would reasonably expect" it to have included the critical words in the text of the statute). To hold that a state employer is never liable for the intentional tort of its employee would ignore the plain language of the statute and come to the curious conclusion that an employee is only capable of doing one thing at a time—either committing an intentional tort *or* performing lawfully assigned duties and tasks.

In sum, if a state employee committed an intentional tort "while acting within the scope of office or employment," vicarious liability exists if the circumstances are such that "the state, if a private person, would be liable to the claimant." This means that for state employer liability to attach—consistent with the common law of vicarious liability—an employee's intentional tort must (1) "be related to the duties of the employee;" and (2) "occur[] within work-related limits of time and place."[7] *Fahrendorff*, 597 N.W.2d at 910.

---

[6] For example, the Federal Tort Claims Act explicitly immunizes federal employers from vicarious liability for many intentional torts committed by its employees, whether the employee was acting within the scope of their employment or not. *See* 28 U.S.C. § 2680(h) (stating that a federal government employer cannot be held liable for the acts or omissions of its employee for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights").

[7] That is not to say there exists a bright-line test for when a state employee is definitively acting within the scope of their office or employment or how far removed their actions must be to determine that they are no longer acting within that scope. We find persuasive our refusal in *Lange* to base a common law vicarious liability analysis on the "arbitrary determination of when, and at what point" the employee's behavior "leave[s] the

14

This does not mean that every intentional tort committed while an employee is "on the clock" or on the employer's premises is subject to vicarious liability. Instead, our common law on vicarious liability holds that whether an intentional tort is "related to the duties of the employee" presents "a question of fact whether the employee's acts were foreseeable, related to, and connected with acts otherwise within the scope of his employment." *Id.* at 911. The same standard applies here.

Lastly, before moving on to whether Sterry's complaint should survive a motion to dismiss, we must address another concern raised by the Department. Worried about a potential tidal wave of vicarious liability suits, the Department and its amicus also argue that public policy considerations support narrowing the scope of vicarious liability for state employers because the Legislature intended to "protect the fiscal integrity and stability of the state government." We have recognized that protecting a sovereign's fiscal integrity is a "legitimate public purpose." *Rowe v. St. Paul Ramsey Med. Ctr.*, 472 N.W.2d 640, 643 (Minn. 1991). But we only consider "the purpose of the statute and the policy issue to be remedied . . . if we determine that the statutory text is unclear." *State v. Khalil*, 956 N.W.2d 627, 640 n.10 (Minn. 2010) (citing Minn. Stat. § 645.16 (2020)). Here, we not only find the text unambiguous, but we find no words in the text of the statute that limit a state employer's liability in the way the Department suggests, and we will not add those words

sphere of the employer's business and become[s] motivated by personal [desires]." *Lange v. Nat'l Biscuit Co.*, 211 N.W.2d 783, 785 (Minn. 1973). The question of whether an employee was acting within the scope of their employment while committing an intentional tort is best left to the factfinder. *See Reetz v. City of St. Paul*, 956 N.W.2d 238, 247 (Minn. 2021) ("And when determining the vicarious liability of an employer, the issue of whether an employee was acting within the scope of their employment is also a question of fact.").

15

for the sake of policy. *See Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 800 (Minn. 2019) ("We do not, however, add words to the plain language of a statute to fit with an identifiable policy."). To the extent that the Department and its amicus believe this interpretation represents an unfavorable public policy, "those issues are best directed to the Legislature." *Shefa v. Ellison*, 968 N.W.2d 818, 822 n.4 (Minn. 2022).

## II.

Having clarified the governing standard for vicarious liability under the Act, we now address whether Sterry's complaint survives a motion to dismiss under Minn. R. Civ. P 12.02(e) for failure to state a claim upon which relief can be granted. Here, the district court granted the Department's motion to dismiss because it found that Youngberg was not acting within the scope of employment when she sexually assaulted Sterry. The court reasoned that "the precise language of [the Act] narrows the scope of employment for government employees more than the general scope that would apply under the common law," so "statutory immunity applies, [and] the specific tort claims Sterry has raised against the [Department] are barred."

Our review of a grant of a motion to dismiss for failure to state a claim is de novo, and we must "determine whether the pleadings set forth a legally sufficient claim for relief." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 68 (Minn. 2020). A claim survives a Rule 12.02(e) motion to dismiss "if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). A claim fails under Rule 12.02(e) when the "complaint does not set forth a legally sufficient claim for relief." *Walmart Inc. v. Winona*

16

*Cnty.*, 963 N.W.2d 192, 196 (Minn. 2021) (citation omitted) (internal quotation marks omitted). When determining whether dismissal was appropriate, we "must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003) (citing *Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 292 (Minn. 1978)).

The question then becomes whether Sterry's complaint alleged facts that, if accepted as true, show that Youngberg's assault and harassment of Sterry occurred while she was acting within the scope of office or employment, consistent with the circumstances under which a private employer would be held vicariously liable under the common law. "Minnesota is a notice-pleading state . . . ." *Walsh*, 851 N.W.2d at 604–05. Under that standard, a plaintiff may plead their case "by way of a broad general statement which may express conclusions rather than, as was required under code pleading, by a statement of facts sufficient to constitute a cause of action." *N. States Power Co. v. Franklin*, 122 N.W.2d 26, 29 (Minn. 1963). This standard does not require that every fact related to every element of a cause of action be pleaded, but rather that a complaint give the adverse party sufficient clarity of the pleader's theory. *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 503 (Minn. 2021).

Here, the complaint alleges that the sexual assault took place under the following circumstances: 1) Youngberg was working as a correctional officer at Moose Lake and was allowed contact with and supervision of inmates; 2) Youngberg used her position of authority to order Sterry into the kitchen supply room to conduct inventory; and 3) Sterry

17

conducted inventory under her supervision.  Additionally, the complaint alleges a pattern of comments and conduct that included making verbal sexual overtures and nonverbal sexually suggestive faces and poses directed toward Sterry.

We acknowledge that Sterry's complaint could have been more straightforward in how its facts correlated to the claims made within, or it could have used language from the Act itself to clarify his theory.  Yet that is not what notice pleading requires.  "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh*, 851 N.W.2d at 603.  Here, Sterry broadly alleged that Youngberg was performing duties or tasks that she had presumably been assigned by her supervisor, and "the question of whether a[] [state] employee was acting within the scope of their employment is explicitly a question of fact." *Reetz v. City of St. Paul*, 956 N.W.2d 238, 247 (Minn. 2021).  Moreover, we have recognized that when an employee commits a sexual assault within work-related limits of time and place, an employer's vicarious liability turns on "a question of fact whether the employee's acts were foreseeable, related to, and connected with acts otherwise within the scope of his employment," such that the assault was related to the duties of employment. *See Fahrendorff*, 597 N.W.2d at 910–13. That same common law rule governs here.  Accordingly, to now hold that Sterry's claim does not survive a Rule 12.02(e) motion to dismiss would all but foreclose state employer vicarious liability for an employee's intentional tort, which would contravene the plain language of the Act and would be contrary to the common law of vicarious liability.

18

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


PROCACCINI, J., took no part in the consideration or decision of this case.

HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.