P.L., Respondent,

v.

Lynn AUBERT, Respondent,

Daniel Brooks, Independent School District No. 306, petitioners, Appellants.

No. C2–94–1502.

Supreme Court of Minnesota.

April 5, 1996.

Michael T. Milligan, Kenneth H. Bayliss, St. Cloud, for appellants.

Katherine S. Flom, Minneapolis, for respondent.

## OPINION

TOMLJANOVICH, Justice.

Lynn Aubert was a 42–year–old licensed school teacher starting her first year of teaching at LaPorte High School, LaPorte, Minnesota in September of 1989. She was interviewed for the position by Daniel Brooks, who was the high school principal and school superintendent for School District No. 306 (ISD No. 306), the LaPorte school district. A standard background check was completed and she was found to have good

academic credentials and exceptional personal references.

P.L. was a student in three classes that Aubert taught—clerical, business math and accounting. Early in the school year, Aubert began talking with P.L. about personal problems with her marriage and her family. She also spoke with him about his family's problems and his personal problems with drinking.

In November or December of that school year, Aubert began kissing P.L. while they were alone in the classroom. In December, Aubert had a Christmas party at her home for her business math students. During the party, she spent time dancing with P.L., resting her hands on his buttocks. More intimate contact occurred in the months following the party.

During times alone with P.L., Aubert would lock the classroom door, and she and P.L. would engage in intimate sexual contact both over and under their clothing. She would also have him sit with her at her desk during class and they would engage in intimate sexual contact hidden only by her desk, while other students were present in the room. Aubert also asked other teachers to excuse P.L. from their classes so that he might receive "extra help." P.L. would meet Aubert in her classroom, she would lock the door, and they would engage in intimate sexual contact consisting of repeated touching of the genitals over and under their clothing, kissing and hugging.

Although sexual intercourse never occurred, the relationship continued until homecoming dress-up week in the spring of 1990.[1] At that time, P.L. told Aubert the relationship had to end and it did end at that time. At no time either during or immediately after the relationship between Aubert and P.L. did either party tell anyone about the relationship or their clandestine meetings during school hours.

In December 1992, P.L. filed a complaint alleging several counts of inappropriate behavior on the part of Aubert, and alleging

that Brooks and ISD No. 306 were responsible for Aubert's behavior. The complaint alleged causes of action against Aubert, Brooks and ISD No. 306 for battery, intentional infliction of emotional distress, sexual harassment, breach of fiduciary duty, negligent supervision, negligent infliction of emotional distress, and negligent hiring.

The trial court granted summary judgment to ISD No. 306 and Brooks, and denied summary judgment to Aubert. On appeal, the court of appeals found fact issues remained regarding the battery, intentional infliction of emotional distress and negligent supervision claims against ISD No. 306 and Brooks. The court of appeals reversed summary judgment on those three claims and affirmed summary judgment in favor of ISD No. 306 and Brooks on the negligent infliction of emotional distress, breach of fiduciary duty, sexual harassment, and negligent hiring claims. ISD No. 306 and Brooks appealed.

In *Marston v. Minneapolis Clinic of Psychiatry and Neurology, Ltd.,* 329 N.W.2d 306 (Minn.1982), we affirmed the two-prong test established ten years earlier in *Lange v. National Biscuit Company,* 297 Minn. 399, 211 N.W.2d 783 (1973), that in order for liability to lie with the employer, "the source of the attack [must be] related to the duties of the employee and * * * [occur] within work related limits of time and place." *Id.* at 405, 211 N.W.2d at 786.

In *Marston* the employee was a psychologist who made unwelcome and improper sexual advances to patients during and immediately after therapy sessions in his office. *Marston,* 329 N.W.2d at 308. We noted that the doctor "intentionally departed from the standards of his profession, not * * * to cause harm * * *, but rather to confer a personal benefit on himself." *Id.* at 310. In that situation, we held the employer liable for the employee's actions, because there was a fact issue as to whether the acts were within the scope of the doctor's employment. We stated that "it should be a question of fact whether the acts of [defendant] were foresee-

---

1. There is a discrepancy as to the date of this school event and apparently no school calendar for that particular year was available from ISD

No. 306 to determine the exact date. Aubert claims the event was in February of 1990; P.L. thought it was in May of 1990.

able, related to and connected with acts otherwise within the scope of employment." *Id.* at 311. This issue of foreseeability was raised because of expert testimony at the lower court that sexual relations between doctors and patients was a "well-known hazard and thus * * * foreseeable." *Id.* It was the foreseeability of the risk that determined the outcome of the *Marston* case.

■ Here we find no evidence that such relationships between teacher and student are a "well-known hazard"; thus foreseeability is absent. While it is true that teachers have power and authority over students, no expert testimony or affidavits were presented regarding the potential for abuse of such power in these situations; thus there can be no implied foreseeability.

■ "[T]he master is liable for any such act of the servant which, if isolated, would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as one indivisible tort * * *." *Lange* at 785–86 (quoting *Gulf, C. & S.F. Ry. Co. v. Cobb,* 45 S.W.2d 323, 326 (Tex.Civ.App.1931)). Here, the sexual contact by the teacher toward the student could not be considered an "indivisible" act directly related to her teaching duties. Thus liability of the master cannot be imputed, even though the acts were committed within work related time and place.

In *Larson v. Independent School District No.314,* 289 N.W.2d 112 (Minn.1979) we found that a principal had a duty to exercise reasonable care in supervising and evaluating the work of teachers within the school. *Id.* at 116. The exercise of that due care involved "maintaining conditions conducive to the safety and welfare of students during the school day." *Id.*

In *Larson* we found that a first year teacher, by his inexperience and lack of supervision, caused injuries to a student. *Id.* A jury in that case found the principal liable for failure to "reasonably * * * supervise the teaching of an inexperienced instructor", thus creating the opportunity for harm. *Id.* We affirmed in *Larson,* finding that a jury could

have reasonably believed that closer supervision may have averted the injury. *Id.*

Brooks and ISD No. 306 performed standard teacher evaluations of Aubert. In addition to the evaluations, Brooks and his assistant made several unannounced visits to Aubert's classrooms. Because the school had no public address system, all messages were hand-delivered by staff and students to classrooms throughout the course of the school day. Even with all of this interaction during the school day, the clandestine relationship between teacher and student was never observed.

■ A school district cannot be held liable for actions that are not foreseeable when reasonable measures of supervision are employed to insure adequate educational duties are being performed by the teachers, and there is adequate consideration being given for the safety and welfare of all students in the school. The safety and welfare of the students in a school setting is paramount. However, in this case, closer vigilance would not have uncovered the relationship because both participants worked hard to conceal it.

We hold that in this case the employer is not liable for the intentional torts of its employee even though the acts occurred within work-related limits of time and place, where such acts were unforeseeable and were unrelated to the duties of the employee. By this holding, we do not change the test set out in *Marston* and *Lange;* we simply clarify that because the acts were not foreseeable by the school district, it cannot be held liable in this instance.

We reverse and remand to the trial court to reinstate the summary judgment on all counts for Brooks and ISD No. 306.

Reversed and remanded.