**Debra LONGEN, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. Civ.99–32–JRT/RLE.**

United States District Court, D. Minnesota.

Sept. 20, 2000.

Marshall Howard Tanick, Mansfield Tanick & Cohen, Mpls, MN, Ann Marie Bildtsen, Jackson Lewis Schnitzler & Krupman, Mpls, MN, for Debra Longen, plaintiff.

Christopher Carlsen, Condon & Forsyth, New York City, Lezlie Ott Marek, Laura M Thomas, Hanson Marek Bolkcom & Greene, Mpls, MN, for Federal Express Corporation, defendant.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Debra Longen brings claims of assault, battery, false imprisonment, intentional and negligent infliction of emotional distress, negligent retention, and discrimination under the Minnesota Human Rights Act against defendant Federal Express Corporation ("FedEx"). This matter is before the Court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. For the reasons set forth below, the Court denies plaintiff's motion and grants defendant's motion in part.

## FACTS

Plaintiff is the food service director for Rosewood Estate, an assisted living facility for seniors. As part of her job, plaintiff regularly orders food service uniforms and accepts delivery of them, which is customarily by way of FedEx. Her claims against FedEx arise out of an incident on September 24, 1998. On that day, FedEx employee John Wojdyla ("Wojdyla"), a delivery driver, arrived at plaintiff's place of work with two boxes labeled for delivery. Plaintiff was not expecting any delivery that day. The receptionist summoned plaintiff to the front desk area, and plaintiff asked Wojdyla where the boxes were. He replied that they were in the truck and were heavy, and that he would not bring them in. Plaintiff then asked to see the boxes, and Wojdyla assured her that it was alright for her to enter the delivery truck, although FedEx policy prohibits non-employees from entering its trucks.

The boxes were labeled with the name and address of plaintiff's employer. Plaintiff could not open them, and she returned to the office to get a scissors and to call her employer's other facilities to find out if the boxes were for them. She then returned to the truck to open the boxes. She bent over to open the boxes. As she was standing up again, Wojdyla, who was standing behind her, allegedly ran his hands over her body from below her buttocks up to her neck, then reached around with his right hand across her body and tightly grabbed ahold of her left breast. Plaintiff struggled, twisted away, and left the vehicle. As she struggled, she caught her sleeve on something in the truck that slowed her ability to escape, but only for a few seconds. Wojdyla denies this version of events; he claims that he slipped, bumped into her, and grabbed her so she would not fall.

After plaintiff left the truck, Wojdyla followed her and apologized for "grabbing" her. Plaintiff soon thereafter informed her supervisor of the incident, who contacted FedEx. FedEx promised to contact plaintiff's supervisor later that day, but failed to do so. Wojdyla returned to Rosewood Estate the next day, allegedly because he was curious about whether anyone had determined the correct destination for the boxes. He also asked for plaintiff's name. After this return visit, plaintiff's supervisor again contacted FedEx. FedEx then made the decision to suspend Wojdyla, and after investigating

the incident it terminated him approximately a month later. Julie Hass ("Hass"), the FedEx human resources representative that investigated plaintiff's complaint, characterized Wojdyla's explanation of the incident as "contrived" and not plausible.

Wojdyla, who first began his employment with FedEx in 1982, had been the subject of two other complaints from female customers. In October 1995, a female employee of a FedEx customer complained to FedEx about a comment Wojdyla had made about her. The note in Wojdyla's personnel file regarding this incident is very cryptic and does not indicate the nature of the comment or the name of the complaining customer. FedEx's response to this complaint was apparently to discuss FedEx's "acceptable conduct policy" with Wojdyla. While investigating plaintiff's complaint, Hass attempted to get more information about this incident but was not successful.

A second note in Wojdyla's file indicates that in February 1998 a female employee of a FedEx customer complained of Wojdyla's "repeated over familiarity." The note sets forth certain procedures Wojdyla was to follow in order to limit his interaction with this employee. During Hass's investigation of plaintiff's complaint, the manager who dealt with Wojdyla in connection with the February incident drafted a memo elaborating on the nature of the incident. According to this memo, the manager, Matthew Cook ("Cook"), spoke with the employee's supervisor,[1] who indicated that Wojdyla paid the employee "unwanted attention" that made her "very uncomfortable." The memo states that the supervisor did not indicate that Wojdyla was making sexual remarks or advances, however, and that she considered that the matter had been handled appropriately. The complaining employee, Laurel Brooks ("Brooks"), testified in her affidavit that Wojdyla looked at her in an inappropriate manner, went out of his way to see her,

and often situated himself so that he could pretend that she was in his way and then touch her in order to move her out of the way. She testified that this inappropriate touching became so obvious that she began avoiding him altogether. On at least one occasion, Wojdyla asked her to come to his truck to count boxes and touched her arm while she was getting in and out of the truck, which Brooks felt was inappropriate and overly friendly. Wojdyla also once brought a male friend, who was not a FedEx employee, to this location and they both proceeded to the bathroom, which Wojdyla knew was near Brooks's work station. After her complaint, Brooks testified, Wojdyla became rude and angry, and began treating another female employee in the same manner.

Plaintiff alleges that as a result of Wojdyla's alleged assault, she has suffered panic attacks. Prior to the assault, plaintiff was being treated for some panic attacks and had been prescribed Xanax and Paxil. She had three panic attacks prior to the incident; one in 1996 and two in 1998. Plaintiff described her post-incident panic attacks as being generally the same as her pre-incident attacks, and she again was prescribed Paxil. As before the incident, plaintiff weaned herself off of Paxil, but will take it when she feels she needs it. Plaintiff also testified that she is afraid to go out in public, steers clear of men in general, and will not accept deliveries at work, but she admitted that the assault has not caused any problems in her marriage. Her treating psychologist reports that plaintiff has experienced fear, anger, increased anxiety, and trouble sleeping. She has curtailed her public activities and tries to avoid places where unknown men will be, which she did not do prior to the assault.

## ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of mate-

---

1. At oral argument, defendant indicated that Cook spoke directly with the complaining em-

ployee, but the memo clearly indicates that Cook spoke with the employee's supervisor.

rial fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court is required to view the facts in a light most favorable to the nonmoving party. *See Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 . The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. Defendant's Motion for Summary Judgment

### 1. Vicarious Liability for Intentional Torts

■ FedEx first argues that it cannot be held vicariously liable for Wojdyla's intentional torts because he was not acting within the scope of his employment. The rule in Minnesota is that an employer is responsible for the acts of an employee committed within the scope of employment. *See Lange v. National Biscuit Co.,* 297 Minn. 399, 211 N.W.2d 783, 784 (1973). An employee acts within the scope of his employment when (1) the source of the attack is related to the duties of the employee and (2) the assault occurs within the work related limits of time and space. *See id.* at 786. In *Lange,* an employee of the defendant assaulted the plaintiff, a store owner, after a heated argument developed over the employee's servicing of the plaintiff's store. *See id.* at 784. The

court found that this assault, although not necessarily motivated by a purpose to serve the employer, was related to the employee's duties because the precipitating cause of the argument concerned the employee's performance of his work. *See id.* at 786.

■ Courts have had some difficulty applying the scope of employment test to sexual assaults. Unlike the assault in *Lange,* which grew out of a work-related argument, employees will sometimes commit sexual assaults simply because the employee's status gives him access to a victim, and not because there is any work-related dispute. The reasoning of *Lange* does not easily apply in these circumstances. The Minnesota Supreme Court has addressed this difficulty by explaining that where sexual assaults by employees in a particular profession are a foreseeable risk of that profession, a sexual assault may be considered "related to" the employee's duties. *See Fahrendorff v. North Homes, Inc.,* 597 N.W.2d 905, 912–13 (Minn.1999) (sexual assault within the scope of employment); *P.L. v. Aubert,* 545 N.W.2d 666, 668 (Minn.1996) (sexual assault not within the scope of employment); *Marston v. Minneapolis Clinic of Psychiatry and Neurology, Ltd.,* 329 N.W.2d 306, 311 (Minn.1982) (sexual assault within the scope of employment).

Plaintiff first argues that Wojdyla's assault was within the scope of his employment because all of the events leading up to the assault occurred as a result of Wojdyla's duties as a FedEx driver. Plaintiff points out that the assault occurred in a FedEx truck while Wojdyla was on duty, and that it was directed toward a FedEx customer who was lured to the truck in connection with a delivery problem. Despite these connections between FedEx and the alleged assault, however, the Court finds that *P.L. v. Aubert* dictates that these circumstances are insufficient to give rise to vicarious liability.

In *P.L.*, a teacher had a sexual relationship with one of her minor students. *See* 545 N.W.2d at 667. Although some of the intimate contact occurred away from school, the relationship began at school and took place largely in the classroom, sometimes when they were alone and sometimes when class was in session. *See id.* The teacher also took advantage of her position to excuse the student from other classes so that they would have additional opportunities for contact. *See id.* The connections between the teacher's employment status and the opportunistic manner in which she pursued sexual contact with a student appear at least as strong as the connections between Wojdyla's employment and alleged assault in this case. Nevertheless, the *P.L.* court held that, in the absence of expert evidence that sexual relations between teachers and students are a well-known hazard of the teaching profession,[2] the school district could not be held vicariously liable for the teacher's conduct. *See id.* at 668. Similarly, the Court finds that, in this case, the connection between Wojdyla's status as a FedEx employee and the assault is not sufficient by itself to give rise to vicarious liability.

Plaintiff next argues that the previous complaints about Wojdyla should have put FedEx on notice of his potential to commit sexual assault. In *Fahrendorff,* the Minnesota Supreme Court cautioned against collapsing the issue of foreseeability in relation to vicarious liability with the question of foreseeability as a test for negligence. *See Fahrendorff,* 597 N.W.2d at 912. The court noted that respondeat superior liability stems from public policy, not from any fault of the employer, and further noted that previous complaints about an employee's conduct are "more relevant to a direct liability action than a respondeat superior claim." *Id.* at 912 & n. 2. Thus, it appears that while evidence of a particular employee's past conduct may be marginally relevant to the issue of an employer's vicarious liability, courts are more interested in determining whether the overall nature of the employer's business and the employee's duties are such that, as a policy matter, vicarious liability for intentional torts is a "foreseeable cost of doing business." *Id.* at 912; *see also Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 422 (Minn.Ct.App.1993) (noting that direct liability claims such as negligent retention and hiring "impose liability for an employee's intentional tort, an action almost invariably outside the scope of employment, when the employer knew or should have known that the employee was violent.").

▮ In this case, like *P.L.*, plaintiff has not presented any admissible evidence that sexual assault is a foreseeable risk of the delivery business.[3] As discussed below,

---

2. Plaintiff argues that "foreseeability" is not a separate element, and points out that in *P.L.*, the court stated explicitly that it was not changing the test set forth in *Lange* and *Marston. See P.L.,* 545 N.W.2d at 668. It is clear from the court's holding, however, that foreseeability is a crucial part of the "related to" inquiry, because the court distinguished *Marston* on the basis of the lack of expert evidence concerning foreseeability in *P.L. See id.* Contrary to plaintiff's assertion, the fact that part of the relationship in *P.L.* took place off school grounds did not play a significant role in the court's decision.

3. In connection with the motions before the Court, plaintiff has submitted the affidavit of purported expert Joseph L. Chernicoff ("Chernicoff") for the purpose of establishing

foreseeability of sexual assaults by delivery van drivers. Plaintiff also submitted this affidavit to the Magistrate Judge in support of her earlier motion to amend her complaint to add a claim for punitive damages. The Magistrate Judge excluded the affidavit because plaintiff failed to timely disclose Chernicoff as an expert, and did not disclose his opinions until the service of that motion. The Court will exclude this affidavit for the same reasons articulated by the Magistrate Judge.

Even without this procedural bar, however, the Court notes that the admissibility of Chernicoff's affidavit is dubious. Chernicoff works in the security industry, and does not appear to have any specialized knowledge regarding the delivery business; he also admits that he lacks any knowledge concerning the prevalence of sexual assaults by delivery driv-

the Court finds that the evidence regarding prior complaints, while not very strong, is sufficient to raise a factual issue regarding negligence. The Court has carefully considered whether this evidence is also sufficient to give rise to vicarious liability, and concludes that in the absence of any further evidence relating to foreseeability, it is not. As noted below, there is no evidence that FedEx actually knew that the previous complaint involved unwanted physical touching. Thus, at most, FedEx was on notice of Wojdyla's tendency to be overly familiar with female customers. This, by itself, is simply not sufficient to render foreseeable a subsequent sexual assault. Moreover, to impose vicarious liability on the basis that FedEx should have known more about the previous complaint would equate the scope of employment inquiry with the standard for assessing negligence, which the Court declines to do. The Court therefore holds that plaintiff has failed to present sufficient evidence that Wojdyla was acting within the scope of his employment.

In so holding, the Court does not intend to exclude the possibility that evidence of an employer's knowledge of an employee's prior bad acts could ever be sufficient to give rise to vicarious liability. That issue is best left to the Minnesota Supreme Court.[4] Nor does the Court hold that expert evidence concerning the foreseeability of sexual assault in the particular profession at issue is always required, although it notes that the presence or absence of such evidence was the crucial factor in *Marston, P.L.*, and *Fahrendorff.* Instead, in keeping with the Minnesota Supreme Court's intent to keep the two inquiries separate, the Court holds that while the evidence of Wojdyla's prior bad acts may be sufficient to give rise to direct liability, it is not automatically sufficient to give rise to vicarious liability. The Court accordingly grants defendant's motion for summary judgment with respect to plaintiff's claims of assault, battery, false imprisonment, and intentional infliction of emotional distress.[5]

## 2. Negligent Infliction of Emotional Distress

To maintain a claim for negligent infliction of emotional distress, plaintiff

ers. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (explaining that the Rules of Civil Procedure require that "any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

4. The Court notes that there may be an inherent tension in holding that such evidence is relevant to the scope of employment issue. Although the law is not settled, some courts have held that a claim for negligent retention is viable only if the employee was acting outside the scope of his employment. *See Leidig v. Honeywell, Inc.*, 850 F.Supp. 796, 807 (D.Minn.1994); *but see M.L. v. Magnuson*, 531 N.W.2d 849, 857 n. 4 (Minn.Ct.App. 1995). Yet, to maintain a negligent retention claim, a plaintiff must produce evidence that the employer was on notice of employee's violent tendencies. *See Yunker*, 496 N.W.2d at 422. If this very same evidence also establishes that the employee was acting within the scope of his employment, a plaintiff would face a Catch–22 in trying to recover under a theory of negligent retention.

5. Plaintiff has moved for partial summary judgment with respect to the issue of liability on her assault, battery, and false imprisonment claims. As a result of the Court's resolution of defendant's summary judgment motion with respect to these claims, the Court denies plaintiff's motion for partial summary judgment. The Court notes, however, that even if it denied defendant's motion for summary judgment on these claims, there would be a factual issue concerning whether Wojdyla was acting within the scope of his employment, thus precluding summary judgment in favor of plaintiff. *See Fahrendorff*, 597 N.W.2d at 912–13 (evidence of foreseeability creates issue of fact); *Marston*, 329 N.W.2d at 311 (same). Moreover, Wojdyla denies plaintiff's version of events, and contends that his contact with her was accidental; there are thus also issues of fact with respect to the underlying elements of plaintiff's claims. While plaintiff points out that FedEx found Wojdyla's claim implausible for the purposes of deciding whether to continue his employment, FedEx has not stipulated or admitted that plaintiff's allegations of Wojdyla's conduct are true.

must have suffered severe emotional distress with accompanying physical symptoms. *See Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 408 (Minn.1998). Plaintiffs bear a particularly heavy burden of establishing the requisite injury: " '[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.' " *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 439 (Minn.1983) (quoting Restatement (Second) of Torts § 46 comment j (1965) (alteration in original)). Plaintiff offers evidence that she is afraid to go out in public, has difficulty sleeping, and suffers anxiety, lightheadedness, and shortness of breath. This level of distress is no greater than that which the court found insufficient in *Hubbard. See id.* at 440 (finding evidence of severe distress insufficient where plaintiff testified that he was depressed and that his distress caused vomiting, skin rashes, stomach disorders, and high blood pressure); *see also Elstrom v. Independent Sch. Dist. No. 270*, 533 N.W.2d 51, 57 (Minn.Ct.App.1995) (affirming summary judgment on emotional distress claim where the plaintiff suffered "insomnia, crying spells, a fear of answering her door and telephone, and depression."). Plaintiff thus cannot prevail on this claim.

■ In addition to plaintiff's lack of sufficient evidence of severe distress, this claim also fails because plaintiff cannot establish that FedEx is vicariously liable for negligence.[6] To maintain a claim against an employer for an employee's negligence, a plaintiff must show that the employee was acting at least partially in furtherance of his employer's interests. *See Marston*, 329 N.W.2d at 310 (noting that vicarious negligence claims, unlike vicarious intentional claims, require that the employee act in furtherance of his employer's interest). Here, plaintiff alleges that Wojdyla intentionally sexually assaulted

her. Although this alleged assault occurred while Wojdyla was in the course of performing his employment duties, the precipitating cause of the assault was apparently Wojdyla's personal desire for gratification. No reasonable trier of fact could find that Wojdyla committed his assault with any purpose to further his employer's interest. The Court therefore grants defendant's motion for summary judgment on plaintiff's claim of negligent infliction of emotional distress.

### 3. Negligent Retention

■ To maintain a claim for negligent retention, plaintiff must establish that FedEx knew or should have known that Wojdyla posed a threat of harm, that FedEx failed to take remedial measures to ensure the safety of others, and that Wojdyla's conduct caused plaintiff a reasonable apprehension of physical injury. *See Grozdanich v. Leisure Hills Health Ctr., Inc.*, 25 F.Supp.2d 953, 980 (D.Minn.1998) ("Grozdanich I"). FedEx argues that plaintiff has failed to present sufficient evidence with respect to the first and third elements of this claim.

FedEx relies on *Grozdanich v. Leisure Hills Health Center, Inc.* 48 F.Supp.2d 885 (D.Minn.1999) ("Grozdanich II") to argue that, as a matter of law, Wojdyla's alleged assault does not constitute physical injury or harm. *See id.* at 891. FedEx's argument misconstrues both the holding of the *Grozdanich* cases and the elements of a negligent retention claim. Plaintiff does not need to establish that she suffered physical injury; it is sufficient for her to show that she suffered a reasonable apprehension of physical injury. *See Grozdanich I*, 25 F.Supp.2d at 980. In *Grozdanich II*, where the court found the allegations insufficient to establish physical injury, the court was addressing the elements of a claim for negligent misrepresentation; negligent retention

---

**6.** Plaintiff's complaint does not clearly indicate whether her claim of negligent infliction of emotional distress is a direct claim or a

vicarious claim. At oral argument, plaintiff's counsel indicated that it is a vicarious claim.

was not at issue. *See Grozdanich II*, 48 F.Supp.2d at 888. Notably, in its previous decision, the court allowed the plaintiff's negligent retention claim to proceed. *See Grozdanich I*, 25 F.Supp.2d at 983.

■ Here, plaintiff alleges that while they were alone in the back of a truck Wojdyla groped her, physically grabbed her, and held her until she was able to struggle away. Whether or not plaintiff suffered actual physical injury, this evidence is sufficient to create a factual issue concerning plaintiff's reasonable apprehension of physical injury. *See id.* at 980 (noting that "sexual harassment involves enough of a threat of a physical injury to permit a negligent retention claim.").

FedEx also argues that there is no evidence that it knew or should have known that Wojdyla posed a threat of harm to others. While the Court finds this to be a closer question, it concludes that plaintiff has presented sufficient evidence to create a question of fact. While FedEx argues that two minor incidents over the course of sixteen years of employment is insufficient to put it on notice of any violent propensities, it is important to note that both the previous incidents occurred within a relatively short time frame, toward the end of Wojdyla's employment. In addition, plaintiff has presented an affidavit from one of the previous complainants, Laurel Brooks, in which Brooks states that Wojdyla repeatedly subjected her to unwanted touching and on one occasion asked her to accompany him to his truck. From evidence of previous repeated, unwanted physical touching of a female customer, in combination with Wojdyla's use of his truck to be alone with a female customer, a reasonable

jury could conclude that Wojdyla posed some risk to the public. While there is no evidence that FedEx actually knew the particulars of these allegations, plaintiff need not establish actual knowledge; it is sufficient that she establish that FedEx should have known. While FedEx claims that it conducted a reasonable and satisfactory investigation of Brooks' complaint, this is a question of fact; a reasonable jury could find that, with minimal diligence, FedEx could have discovered the substance of these allegations. Indeed, while FedEx argues that the note in Wojdyla's personnel file regarding the first complaint is so vague as to fail to put it on notice of any dangerous proclivities, a jury could find that this vagueness itself should have prompted FedEx to take a closer look at a second complaint. Thus, for the purposes of plaintiff's negligent retention claim, the Court finds that plaintiff has presented sufficient evidence to create a factual issue concerning whether FedEx knew or should have known that Wojdyla presented a risk of sexual assault.[7]

### 4. Minnesota Human Rights Act

Plaintiff brings a claim under the Minnesota Human Rights Act's ("MHRA") public accommodations provision, Minn.Stat. § 363.03, subd. 3(a)(1). That provision states, in relevant part, that it is an unfair discriminatory practice "to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or

---

7. In arguing that Wojdyla's conduct was unforeseeable as a matter of law, FedEx also relies on language from the Magistrate Judge's Order wherein he denied plaintiff's motion to amend her complaint to allege punitive damages. The Magistrate Judge's conclusions in that Order do not preclude plaintiff's negligence claim, however, because the Magistrate Judge was assessing the evidence under a different, and significantly more stringent, standard: to amend her complaint to allege punitive damages, plaintiff was required to produce clear and convincing evidence that FedEx acted with deliberate disregard for the rights or safety of others. *See* Minn.Stat. § 549.20, subd. 1(a). In contrast, to maintain a claim for negligent retention, plaintiff need only establish by a preponderance of the evidence that FedEx knew or should have known of a risk and that it negligently failed to take adequate measures to address the risk.

sex ..." Plaintiff contends that FedEx is a public accommodation and that Wojdyla's assault denied her the "full and equal enjoyment" of its services because of her sex.

FedEx first argues that plaintiff was not denied any goods or services and that she lacks any evidence that any such denial was because of her sex. The essence of FedEx's argument is that the facts plaintiff alleges do not give rise to any sort of claim contemplated by the MHRA. The statutory language supports a public accommodations claim under these facts, however. The MHRA defines discrimination to include sexual harassment. *See* Minn.Stat. § 363.01, subd. 14. "Sexual harassment," in turn, is defined as

> unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when:
>
> (1) submission to that conduct or communication is made a term or condition, either explicitly or implicitly, of obtaining employment, **public accommodations** or public services, education, or housing;
>
> (2) submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting that individual's employment, **public accommodations** or public services, education, or housing; or
>
> (3) that conduct or communication has the purpose or effect of substantially interfering with an individual's employment, **public accommodations** or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, **public accommodations**, public services, educational, or housing environment....

Minn.Stat. § 363.01, subd. 41 (emphasis added). Thus, the Minnesota legislature clearly intended to create a cause of action for plaintiffs who suffer sexual harassment in connection with receiving services from a public accommodation. Sexual harassment, which is legally defined as discrimination on the basis of sex, includes sexually motivated physical contact. Plaintiff's allegation that a FedEx employee touched her buttocks and grabbed her breast in the course of delivering a package fits comfortably within this statutory scheme; there is no requirement that FedEx actually deny a good or service, only that it deny her the "full and equal enjoyment" of its goods and services. The statutory language clearly demonstrates the Minnesota Legislature's conclusion that sexual harassment could work to deny a member of the public the full and equal enjoyment of goods and services in a public accommodation.

FedEx further argues that plaintiff's employer, not plaintiff herself, was a FedEx customer, and thus plaintiff was not denied any service. FedEx has not cited, and the Court has not found, any case law indicating that when an employee of a business is denied services for the business on the basis of a prohibited characteristic personal to the employee, the employee cannot maintain a claim. Other courts have permitted claims under similar circumstances without discussing this issue. *See Jackson v. Motel 6 Multipurpose, Inc.*, 931 F.Supp. 825, 827–31 (M.D.Fla.1996) (1996) (permitting black police officers who were denied motel rooms while traveling on police business to maintain a claim under federal public accommodations law). This Court sees no contradiction in finding that plaintiff can state a claim. If the Court were to credit FedEx's argument, then a store could deny services to a woman on the basis of her sex if the purpose of her visit was to buy goods for her employer. Such a result is insupportable. Whether or not plaintiff is the ultimate consumer of the goods or services that she was denied, the fact remains that she personally utilized the services to perform her job. Thus, viewing the facts in the light most favorable to plaintiff, a factfinder could conclude that she was denied equal access to FedEx's services on the basis of sex.

FedEx next points out that its trucks are not open to the public and are therefore not a "public accommodation." This argument misconstrues the nature of plaintiff's claim, however. She is not asserting that she had a right to enter the FedEx truck. Instead, she is challenging the denial of the full and equal enjoyment of FedEx's services, which clearly fit the definition of "public accommodation." The MHRA defines "place of public accommodation" to include "a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public." Minn.Stat. § 363.01, subd. 33. FedEx does not dispute that it is a business whose services are sold to the public, and the MHRA's public accommodations provision therefore applies to it.

FedEx raises one last, oblique argument in favor of summary judgment on this claim. Without citing authority, FedEx states that "[t]he MHRA is not intended to impose liability on an employer for the intentional acts of an employee acting outside the scope of his employment." Mem. in Supp. of Federal Express Corporation's Mot. for Summ.J., at 24. The Court agrees that determining FedEx's liability for Wojdyla's conduct under the MHRA raises a number of difficult questions. The parties have not, however, addressed these questions, and the Court's research has not revealed a clear answer. The MHRA itself creates a safe haven for employers who neither know nor should know of the harassment or take "timely and appropriate action" to address the harassment, but this provision is limited to cases involving employment discrimination. See Minn.Stat. § 363.01, subd. 14(3). This issue has apparently not arisen under the MHRA's public accommodations provision. Cases arising under the federal public accommodations law, 42 U.S.C. § 2000a, have taken a variety of approaches. Compare Arguello v. Conoco, Inc., 207 F.3d 803, 810 (5th Cir.2000) (applying scope of employment test and traditional agency principles) with Jones v. City of Boston, 738 F.Supp. 604, 606 (D.Mass.1990) (holding that respondeat superior does not apply to § 2000a claims).

As discussed above, the Court has found that Wojdyla was acting outside the scope of his employment for the purposes of determining vicarious liability for intentional tort claims. It is not clear to the Court, however, that it would be appropriate to apply this analysis to a claim under the MHRA. The scope of employment test used in sexual assault cases turns primarily on whether such assaults are a foreseeable risk of business. See Fahrendorff, 597 N.W.2d at 912. This test serves to limit vicarious liability to those cases where it is fair, as a matter of public policy, to impose such liability. See id. But the public policy in favor of permitting a cause of action for victims of sexual harassment in public accommodations is embodied in the MHRA itself. Moreover, because § 2000a does not prohibit sex discrimination, the special problems inherent in the scope of employment analysis that arise in such cases are simply absent from federal decisional law.

The Court is reluctant to import vicarious liability analyses from other areas of law without any guidance or briefing from the parties. Accordingly, the Court denies FedEx's motion for summary judgment at this time. If either party believes that the issue of vicarious liability under the MHRA is capable of resolution on summary judgment, however, it may move the Court within ten days of the date of this Order for leave to file such a motion.

**5. Causation**

FedEx's final argument is that all of plaintiff's claims should be dismissed because she cannot show that FedEx proximately caused her claimed damages. FedEx bases this argument on the fact that plaintiff suffered from similar panic at-

tacks and sleeplessness and took the same medicine prior to the alleged assault. Therefore, according to FedEx, plaintiff cannot show that the alleged assault caused her damages. *See Jackson v. Reiling*, 311 Minn. 562, 249 N.W.2d 896, 897 (1977) (explaining that damages which are too remote or speculative may not be recovered). Plaintiff has alleged a new problem stemming from the assault, however, which is her fear of going out in public and of strange men, and her treating psychologist opined that her other problems have increased as a result of the assault. The Court finds this evidence sufficient to create a factual issue with respect to causation.

## ORDER

Based on the submissions of the parties, the arguments of counsel, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for partial summary judgment [Docket No. 43] is **DENIED**;

2. Defendant's motion for summary judgment [Docket No. 36] is **GRANTED in part** and **DENIED in part**;

3. Defendant's motion is **GRANTED** with respect to plaintiff's claims of assault (count I), battery (count II), false imprisonment (count III), intentional infliction of emotional distress (count IV), and negligent infliction of emotional distress (count V), and these claims are hereby **DISMISSED WITH PREJUDICE**;

4. Defendant's motion is **DENIED** in all other respects;

5. Either party may, within ten (10) days of the date of this Order, move the Court for leave to file a motion for summary judgment on the issue of whether defendant can be held vicariously liable under the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 3(a)(1).