**L.M., a minor, by her parents and natural guardians S. and D.M., et al., Appellants,**

**v.**

**Tom G. KARLSON, Respondent,**

**New Horizon Enterprises, Inc., et al., Respondents,**

**State of Minnesota, et al., Respondent.**

**No. CX–01–1672.**

Court of Appeals of Minnesota.

June 18, 2002.

Kay Nord Hunt, John R. McBride, Sheila A. Bjorklund, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondent New Horizon.

Teresa K. Patton, Susan M. Coler, Sprenger & Lang, PLLC, Minneapolis, MN, for appellants.

Considered and decided by STONEBURNER, Presiding Judge, HARTEN, Judge, and ANDERSON, Judge.

## OPINION

STONEBURNER, Judge.

Appellants, children and parents of children who were abused by their day-care teacher, Tom Karlson, appeal dismissal of their claims of respondeat superior and negligent hiring, supervision, and retention against Karlson's employer, respondent New Horizon Enterprises, Inc. (New Horizon). Appellants also challenge denial of their motion to amend the complaint to add a claim for punitive damages. Because there is a genuine issue of material fact as to whether sexual abuse is a foreseeable risk of the day-care industry, we reverse the district court's grant of New Horizon's motion for summary judgment and remand for a trial on appellant's respondeat superior and negligent supervision claims. Because the evidence does not establish a genuine issue of material fact as to whether New Horizon knew or should have known that one of its day-care teachers had sexually abused a child in the

past and was sexually abusing children at New Horizon, we affirm the district court's grant of summary judgment on appellants' negligent hiring and negligent retention claims.

## FACTS

After Tom Karlson graduated from Anoka–Hennepin Technical College's child-development program, he was employed by A to Z Child-care Center as an assistant teacher. He applied for a position with New Horizon. Susan Robbins, director of New Horizon's Maple Grove New Horizon Child-care Center, interviewed Karlson in September 1995. Robbins called A to Z Child-care Center, which gave Karlson a positive reference.

A background study is required for each person who will have direct contact with children in a day-care center. Minn.Stat. § 245A.04, subd. 3 (1994 & Supp.1995); Minn. R. 9543.3030 (1995); Minn. R. 9543.3040, subps. 1, 2 (1995). Licensed day-care programs such as New Horizon are required to submit an application for a background study to DHS when they first employ a child-care worker and annually thereafter. Day-care providers must maintain documentation of background-study applications in the employee's personnel file. Minn.Stat. § 245A.04, subd. 3 (1994 & Supp.1995); Minn. R. 9543.3040, subps. 1, 5 (1995). The purpose of the study is to determine whether any of the disqualifiers set forth in the statute and regulations is present. If any is present, then the person under study is disqualified from being permitted to work with children in a licensed program. Minn. R. 9543.3070, subp. 1 (1995). Robbins recalls that Karlson filled out a background-study application. Robbins does not remember mailing the application. It is undisputed that DHS did not respond to a background-study application on Karlson and

has no record in its database of having received the background-study application. When a background study is completed, the only information provided to the requesting program is: (1) notification that the subject is not disqualified; (2) notification that additional time is needed for the study; or (3) notification that the subject is disqualified from direct contact with children. Minn. R. 9543.3060, subps. 5, 6 (1995). The last background study done on Karlson, before he was hired by New Horizon, was completed on March 28, 1995, and he was not disqualified from direct contact with children.

DHS interpretive guidelines permit an individual to have direct contact with children before a program receives a response to the request for a background study because it can take from two weeks up to a year and a half or more to obtain from DHS a completed background study on an employee. In this case, it is undisputed that if New Horizon had submitted a background-study application at the time Karlson was hired, he would not have been disqualified from direct contact with children. But DHS would have requested more information from Isanti County because DHS was aware that, in connection with an application Karlson submitted in Isanti County to become a foster parent, there was an allegation that Karlson had sexually abused a child eight years earlier.

Karlson taught three and four-year-old children at New Horizon. His classroom was divided from the preschool room next door with glass sliding doors. The glass sliding doors were surrounded by glass as well. Karlson's room had windows on the outer walls looking onto the playgrounds. Doors to the classrooms at New Horizon were kept open most of the time, and, except during nap-time, another teacher was usually present in the adjoining classroom. The only part of the classroom that

was not easily visible from the next room was the bathroom. During nap-time, the doors between Karlson's room and the adjoining room were open and Karlson and the other teacher alternated monitoring the children in both rooms. Karlson admitted that he sexually abused several children, usually in the bathroom, during nap-time.

In June 1996, New Horizon hired Traci McPherson to work with Karlson. After three weeks, McPherson asked to be moved to another room because she disagreed with Karlson's teaching strategies. She believed that he was verbally abusive and physically rough with the children, but McPherson did not suspect that Karlson was sexually abusing children. Jennifer Odden, a child-care co-worker at New Horizon, expressed concerns to Robbins about Karlson's lack of teaching skills. Corrie Nichols, a child-care co-worker at New Horizon, expressed concerns to Robbins about inappropriate comments Karlson made in front of children. Robbins recalled speaking with Karlson once about a parent who had concerns about ensuring that Karlson did educational activities and once about a parent who wanted more papers sent home about the child's day. Robbins did not recall co-workers raising concerns with her about Karlson's conduct with the children.

Karlson testified that no one at New Horizon ever saw his inappropriate sexual actions with the children, which he tried to keep secret. None of the parents of the involved children reported any concerns to Robbins prior to the police investigation of Karlson. Robbins first learned about potential problems with Karlson when he came to her in August 1996 about a police investigation involving touching children. Robbins immediately sent him home and called New Horizon's regional manager.

Karlson never returned to work at New Horizon.

Appellants sued New Horizon, alleging that New Horizon is responsible for Karlson's acts under the doctrine of respondeat superior and is also liable under theories of negligent hiring, supervision, retention, and entrustment, and premises liability. The district court granted New Horizon's motion for summary judgment on all claims and denied appellants' motion to amend their complaint to add a claim for punitive damages. Appellants appeal dismissal of their respondeat superior, negligent hiring, negligent supervision, and negligent retention claims and denial of their motion to add a claim for punitive damages.

## ISSUES

1. Did appellants provide sufficient evidence to raise a genuine issue of material fact about whether criminal sexual misconduct is a foreseeable risk of the duties of a day-care provider, making adverse summary judgment on their claim of respondeat superior inappropriate?

2. Did the district court err by granting summary judgment for New Horizon on appellants' claims of negligent hiring, supervision, and retention?

3. Did the district court abuse its discretion by denying appellants' motion to amend the complaint to add a claim of punitive damages?

## ANALYSIS

### 1. Standard of Review

When reviewing a grant of summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). No genuine issue of material facts exists "[w]here the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. A genuine issue for trial "must be established by substantial evidence." *Id.* at 69–70 (quoting *Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976)).

## 2. Respondeat Superior

■ An employer is liable for the intentional torts, including inappropriate sexual touching, of its employees if the employees are acting within the scope-of-employment. *Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999); *Lange v. Nat'l Biscuit Co.*, 297 Minn. 399, 401, 211 N.W.2d 783, 784 (1973); *see also P.L. v. Aubert*, 545 N.W.2d 666, 667–68 (Minn.1996) (applying scope of employment test to circumstance in which teacher engaged in sexual touching of student). In *Lange*, the Minnesota Supreme Court determined that an employee is acting within the scope of employment when the intentional tort committed by the employee "is related to the duties of the employee and occurs within work-related limits of time and place." 297 Minn. at 404, 211 N.W.2d at 786.

It is undisputed that the conduct at issue took place during Karlson's workday, in the classroom, and primarily in connection with his assigned duty of assisting young children in the bathroom. The district court concluded that appellants failed to provide the court with any "evidence that criminal sexual misconduct is a foreseeable risk of the duties of a day-care provider" and granted New Horizon's mo-

tion for summary judgment on the appellants' claim of respondeat superior.

In *Marston v. Minneapolis Clinic of Psychiatry and Neurology, Ltd.*, the supreme court affirmed the *Lange* rule and held that where the plaintiff provided evidence that "sexual relations between a psychologist and a patient is a well-known hazard and thus, to a degree, foreseeable and a risk of employment" a question of fact exists as to whether an employer is liable on a respondeat superior claim for a psychologist's sexual misconduct with a patient. 329 N.W.2d 306, 310–11 (Minn.1982). The court reversed the district court's grant of judgment notwithstanding the verdict to the employer after a jury found in favor of plaintiff. *Id.* at 307.

In *Aubert*, a student claimed that the school-district employer was liable under respondeat superior for the acts of a teacher who engaged in a sexual relationship with him. 545 N.W.2d at 667. The supreme court concluded that the school district was entitled to summary judgment because there was no evidence presented demonstrating that a sexual relationship between a teacher and a student is a foreseeable risk of employing a teacher. 545 N.W.2d at 668. The court noted that the plaintiff had failed to provide the district court with expert testimony or affidavits "regarding the potential for abuse of * * * power between a teacher and a student." *Id.* The court also noted that the employer had performed standard teacher evaluations, and made several unannounced visits to the classroom, and that the student and teacher actively concealed the relationship. *Id.*

In *Fahrendorff*, however, the supreme court held that a victim of sexual abuse by a group-home parent made a sufficient showing of foreseeability to prevent summary judgment by providing the district court with an affidavit of a purported ex-

pert stating that sexual behavior is a "well known hazard in this field." 597 N.W.2d at 905–12.

▮ Here, appellants provided the affidavit of Marianna Kahkonen. New Horizon has not challenged Kahkonen's credentials as an expert witness. She has a bachelor's degree in humanities and child psychology and is pursuing a master's degree in early childhood education at the University of Minnesota. Kahkonen has worked in the child-care profession since 1983 and has served as executive director for Kinderplatz Childcare and Education Centers since 1986. Her duties include management and administrative duties.

Kahkonen's initial affidavit stated that new employees at her center are not allowed to work unsupervised with children until a background clearance is received from the state and that in her

> professional experience, the possibility of sex abuse of children is certainly a paramount concern for child-care providers * * * because the children are so young and they are vulnerable, easily manipulated, and cannot communicate well.

In her "Professional Opinion Report," which was also provided to the district court, Kahkonen listed the deposition testimony that she reviewed in this case and stated, in part, that in her professional opinion:

> The possibility of sex abuse of children is certainly a paramount concern for childcare providers. Young children are especially vulnerable since they cannot communicate their feelings well.

It is also unreasonable that any employee is allowed to work unsupervised, with continued access to children, after the Administrator of a childcare Center has received reports of alarming behavior. Appellants argue that this expert affidavit and report, together with the statutory requirement of background studies that specifically cover sexual misconduct and information in training materials provided by New Horizon to Karlson constitute evidence that sexual abuse by a child-care worker is a sufficiently foreseeable risk of employment to withstand New Horizon's motion for summary judgment.

New Horizon argues that the background studies are mandatory for many licensed professions and represent an attempt to screen out individuals

> who, for a myriad of reasons, could be considered a danger to those with whom they work. The fact of screening does not, per se, make every crime a 'well known hazard,' in the day-care industry.[1]

We agree that the background study alone does not make sexual abuse of children by day-care workers a "well-known" hazard, but it is evidence of awareness by the state that sexual abuse is one of the potential risks involved in any employment involving vulnerable clients.

New Horizon points out that the training materials provided to Karlson do not discuss sexual abuse of children by day-care providers and do not contain any policies or procedures relating to sexual abuse of children.[2]

New Horizon asserts that Kahkonen's statement that "the possibility of sex abuse

1. New Horizon, citing *Fahrendorff*, notes that simply because a background study is performed does not mean that sexual abuse is foreseeable, but it does not appear that the background study was brought to the court's attention in that case.

2. Because New Horizon's training materials were not contained in the district court file, we are unable to substantiate New Horizon's claim.

of children is certainly a paramount concern for child-care providers" is qualitatively different from the affidavit at issue in *Fahrendorff* in which the purported expert stated that "inappropriate sexual contact or abuse of power in these situations, although infrequent, is a well known hazard in this field." *Fahrendorff*, 597 N.W.2d at 909.

■ In oral argument, New Horizon asserted that Kahkonen's statement could refer only to the fact that child-care providers are "mandatory reporters," alert to the possibility that anyone could be abusing children. We disagree. Examining the affidavit in the light most favorable to appellants, the context of the statement in Kahkonen's affidavit and report clearly indicates that she is referring to abuse by day-care employees in direct contact with children. As *Fahrendorff* demonstrates, foreseeability is not necessarily dependent on the frequency of occurrence. *Id.* at 911–12 (holding that expert affidavit stating inappropriate sexual contact in group homes is infrequent but well-known hazard, created genuine issue of material fact). Kahkonen's affidavit is conclusory and lacking in specific examples, but similar problems with the affidavits in *Fahrendorff* and *Marston* did not prevent the supreme court from holding such affidavits sufficient to establish a question of material fact on the issue of foreseeability, making summary judgment inappropriate. *Id.* at 912–13. We conclude that appellants have raised a genuine issue of material fact on the issue of foreseeability and therefore reverse summary judgment on appellants' respondeat superior claim.

### 3. Negligent Hiring

■ A claim of negligent hiring is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn.App.1993) (quotation omitted), *review denied* (Minn. April 20, 1993). Liability for negligent hiring "is determined by the totality of the circumstances surrounding the hiring and whether the employer exercised reasonable care." *Id.*

■ The district court concluded that summary judgment was appropriate on appellants' negligent-hiring claim because, despite the fact that New Horizon cannot demonstrate that it submitted a background-study application, the undisputed evidence is that even if DHS performed a background study at the time New Horizon hired Karlson, DHS would not have disqualified Karlson. We agree. An employee of the DHS testified that at the time of Karlson's hiring in September 1995 there was not sufficient evidence of a problem to disqualify Karlson as a child-care worker, although DHS would have requested other agencies to investigate the seven-year-old allegations made in connection with Karlson's application to become a foster parent in Isanti County. DHS guidelines permitted Karlson to work directly with children prior to completion of the background study. Evidence in the record indicates that a study by DHS could take longer than six months. There is no evidence that other agencies would have complied with a request from DHS for an additional investigation or would have complied with the request in time to have prevented the abuse in this case. The record supports the district court's conclusion that appellants have failed to establish a claim of negligent hiring and

we affirm summary judgment on this claim.

## 4. Negligent Retention

█ Negligent retention

occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.

*Yunker,* 496 N.W.2d at 423–24 (quotation omitted).

█ The district court concluded that summary judgment on the negligent-retention claim was appropriate because appellants failed to show that any of the complaints made about Karlson made his sexual abuse of the children foreseeable to New Horizon. Appellants contend that they provided sufficient evidence to give rise to a factual issue that New Horizon negligently retained Karlson because coworker complaints and the complaint of a parent were not investigated and because a background study would have revealed problems.

Appellants also argue that any scrutiny of Karlson would have caused him to voluntarily leave this employment. The focus is not on what Karlson might have done, however, but on what the employer should have done. It is undisputed that none of the complaints allegedly made to Robbins implicated inappropriate touching by Karlson. Because the record supports the district court's conclusion that there is no evidence that New Horizon was aware or should have been aware that Karlson was sexually abusing children, the district court did not err by granting summary judgment on appellants' negligent-retention claim.

## 5. Negligent Supervision

█ Negligent supervision is derived "from the doctrine of respondeat superior" and, therefore, in order to successfully make out a claim for negligent supervision, a party must show "that the employee's actions occurred within the scope of employment." *M.L. v. Magnuson,* 531 N.W.2d 849, 858 (Minn.App.1995), *review denied* (Minn. July 20, 1995).

The district court granted summary judgment on this claim based on its conclusion that "sexual misconduct is not a foreseeable risk arising out of the duties of a day-care provider." But we have concluded that appellants have presented sufficient evidence to give rise to a fact issue as to whether Karlson's conduct was foreseeable to New Horizon. Because a fact issue exists with regard to foreseeability, the district court erred by granting summary judgment to respondents on appellants' negligent-supervision claim.

## 6. Punitive Damages

█ An appellate court may not reverse a district court's denial of a motion to add a claim for punitive damages absent an abuse of discretion. *LeDoux v. N.W. Publ'g, Inc.,* 521 N.W.2d 59, 69 (Minn.App. 1994), *review denied* (Minn. Nov. 16, 1994). Here, appellants challenge the denial of their motion to add a claim for punitive damages, arguing that they provided sufficient evidence to meet the test for a claim for punitive damages pursuant to Minn. Stat. § 549.20 (2000).

After a party files an action, the party may move the court to amend its pleading to add a claim for punitive damages. Minn.Stat. § 549.191 (2000). The motion to amend must "allege the applicable legal basis under section 549.20 or other law for awarding punitive damages." *Id.* A district court must permit a party to add a claim for punitive damages if "the court

finds prima facie evidence in support of the motion." *Id.*

In a civil action, punitive damages "shall be allowed * * * only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1(a) (2000). A defendant acts with a "deliberate disregard for the rights or safety of others" when

the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

(1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

(2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1(b).

The district court declined to address appellants' motion to amend their complaint to add a claim for punitive damages because it granted New Horizon's motion for summary judgment. The district court noted that "as to the merits of [the punitive damages] motion, plaintiffs have failed to establish that New Horizon's conduct rose to the level required by Minn.Stat. § 549.20, subd. 1." Because the district court did not fully address the issue of punitive damages, we cannot adequately review the denial of the motion for an abuse of discretion. On remand the district court should fully address this issue. By remanding, we do not intend to express any opinion on the merits of appellants' motion.

### DECISION

Appellants' expert affidavit is sufficient to raise a genuine issue of material fact about the foreseeability of sexual abuse of children by day-care workers, making summary judgment on their claims for respondeat superior and negligent supervision inappropriate. The district court did not err by granting summary judgment on appellants' claims of negligent hiring and negligent retention because the evidence failed to establish that the employer knew or should have known that Karlson had sexually abused a child in the past or was sexually abusing children at New Horizon. Appellant's motion to amend the complaint to add a claim of punitive damages shall be fully addressed by the district court on remand.

**Affirmed in part, reversed in part, and remanded.**